DANIEL HERD, DANIEL BROWN AND JOSEPH BROWN v. THE UNITED STATES OF AMERICA.

(Filed January 12, 1904.)

1. COURTS—Jurisdiction—Indian Reservation—Exceptions. The district court of the Territory of Oklahoma, when sitting with, and exercising the powers and jurisdiction of a United States court, has exclusive jurisdiction of all crimes punishable by the laws of the United States, when committed by persons other than Indians upon an Indian reservation occupied by Indian tribes, and to which reservation the Indian title has not been extinguished.

2. SAME. Where the indictment charges larceny committed within an Indian reservation in the Territory of Oklahoma, it is not nec-

essary to charge in the indictment that the defendant is not an Indian, where it is not sought to convict him under the act of congress approved March 3rd, 1885.

(Syllabus by the Court.)

*Error from the District Court of Pawnee County; before B. F. Burwell, Trial Judge.*

*Buckner & Sons,* for plaintiffs in error.

*Horace Speed, United States Attorney,* for defendant in error.

STATEMENT OF FACTS.

The plaintiffs in error were convicted on the 22nd day of November, 1900, in the district court of Pawnee county, for the larceny of a brown mare. Said larceny is charged to have been committed in the Osage Nation attached to Pawnee county for judicial purposes. Trial was had, and the defendants were convicted and sentenced to imprisonment in the federal jail for one year. Necessary exceptions were saved, and the case brought here on error.

Opinion of the court by

IRWIN, J.: The first error assigned is that the United States court, or the district court of Pawnee county, sitting with the powers of a district court of the United States, and the powers of a circuit court of the United States, had no jurisdiction of the case. In support of this contention the first authority cited by the defendant's counsel is the case of *Pridgeon v. The United States,* 153 U. S. page 51. We think the first assumption of the plaintiffs in error, to-wit: "The Pridgeon case arose in the Otoe reservation, in the Territory of Oklahoma," is erroneous, as by an examination of the case in the 153 U. S., and the decision of the court, it will be seen

33 —Vol 13

that the supreme court of the United States there held that the indictment charged that the offense was committed in the Cherokee Strip, which at that time was not included in Oklahoma. The effect of that decision was that horse stealing, when committed in an Indian country within the boundaries of Oklahoma Territory, was not a crime against the United States punishable under the act of congress, passed Feb. 15th, 1888, against horse stealing in the Indian Territory. There, the question under consideration was whether the offense as charged in the indictment was charged to have been committed in that portion of the Indian country embraced within the Territory of Oklahoma, or that portion outside of the Territory of Oklahoma, to-wit, the "Cherokee Strip."

The court there says:

"Assuming that the first question certified (that is the question was horse stealing on November 2nd, 1890, in the Indian country within the boundaries of Oklahoma Territory as defined by the act of congress passed May 2nd, 1890, a crime against the United States and punishable under the act of congress passed February 15th, 1888, against horse stealing in the Indian Territory) has reference to such parts of the Indian country as were embraced within the boundaries of Oklahoma Territory, and formed a part thereof, as defined and established by the act of May 2, 1890, c. 26, stat. 81, it admits of little or no doubt that this question must be answered in the negative."

This construction is no doubt correct, as the act under which that prosecution was conducted was an act which limited the offense charged in the indictment to the Indian Territory. Now if this country in which this act was committed was not in the Indian Territory, but in the Territory of Oklahoma, then it would not come within the provisions of this act. We think that no stronger argument can be made in

refuting the contention of plaintiff in error's counsel, as to the application of the Pridgeon case, than that used by this court in the case of *Goodson v. The United States,* 7 Okla. page 117. This court in that case laid down what we believe to be the correct doctrine:

"The district courts of the Territory of Oklahoma, when sitting with, and exercising the powers and jurisdiction of a United States court, have exclusive jurisdiction of all crimes punishable by the laws of the United States, when committed by persons other than Indians, upon an Indian reservation, occupied by Indian tribes, and to which reservation the Indian title has not been extinguished."

This court in that decision cites as authority therefor the case, *In re Wilson,* 140 U. S. 575, which is a decision by Justice Brewer. That portion of the opinion which relates to the question here under consideration, we think is applicable to the case at bar, and will bear a repetition in this case. It is as follows:

"The necessary effect of this legislative recognition was to confirm the executive order, and establish beyond challenge the Indian title to this reservation. Indeed, the fact that this is an Indian reservation is not contested by the petitioner, but rather assumed by him in his argument. His proposition is that congress by act approved March 3, 1885, 23 stat. 385, c. 341, sec. 9, conferred upon the territory and her courts full jurisdiction of the offense of murder when committed on an Indian reservation by an Indian. (*Ex parte, Gon-sha-yee,* 130 U. S. 343, [9 Sup. Ct. 542]). This offense had heretofore, when committed in such place by others than Indian, been cognizable by the courts of the United States, under revised statute, sect. 2145. The petitioner believes that the United States, by yielding up a part of her jurisdiction over the offense of murder when committed on an Indian reservation,

lost all; that is, that her jurisdiction of the offense in the particular place must be 'sole and exclusive,' or will not exist at all; that it cannot be that there shall be one law and one mode of trial for a murder in a particular place if committed by an Indian, and another law and mode of trial for the identical offense in the same place committed by a white man or a negro. We are unable to yield our assent to this argument. The question is one of statutory construction. The jurisdiction of the United States over these reservations and the power of congress to provide for the punishment of all offenses committed therein; by whomsoever committed, are not open questions. (*U. S. v. Kagama,* 118 U. S. 375. [6 Sup. Ct. 1109]). And this power being a general one, congress may provide for the punishment of one class of offenses in one court, and another class in a different court. There is no necessity for, and no constitutional provision compelling, full and exclusive jurisdiction in one tribunal; and the policy of congress for a long time has been to give only a limited jurisdiction to United States courts. Section 2145 extends to the Indian country the general laws of the United States, as to the punishment of crimes committed in any place within the sole and exclusive jurisdiction of the United States, except as to crimes the punishment of which is otherwise expressly provided for. This Indian reservation is a part of the Indian country, within the meaning of that section (*Bates v. Clark,* 95 U. S. 204; *Ex parte, Crow Dog,* 109 U. S. 556. [3 Sup. Ct. 396.]) But this extension of the criminal laws of the United States over the Indian country is limited by the section immediately succeeding, 2146, as follows: 'The preceding section shall not be construed to extend to crimes committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured

to the Indian tribes respectively.' So that before the act of 1885, the jurisdiction of the United States courts was not sole and exclusive over all offenses committed within the limits of an Indian reservation. The words 'sole and exclusive,' in section 2145, do not apply to the jurisdiction extended over the Indian country, but are only used in the description of the laws which are extended to it. The effect of the act of 1885, was not to transfer to territorial courts a part of the sole and exclusive jurisdiction of United States courts, but only a part of the limited jurisdiction then exercised by such courts, together with jurisdiction over offenses not theretofore vested therein. The argument of the petitioner therefore fails. There has been no transfer of part of a sole and exclusive jurisdiction, carrying by implication, even in the absence of express language, a transfer of all jurisdiction, but only a transfer of part of an already limited jurisdiction, and neither by language nor implication transferring that theretofore vested and not in terms transferred. We may here, in passing, notice that the distinction between district courts when sitting as courts of the territory and when sitting as courts of the United States, was fully developed and explained in the case of *Ex parte Gon-sha-yee, supra;* that by section 629 of the revised statutes the circuit courts of the United States are given jurisdiction of crimes and offenses cognizable under the authority of the United States; and that by the act organizing the Territory of New Mexico, of September 9, 1850, 9 stat. 446, c. 49, and the subsequent act of February 24, 1863, 12 stat. 664, c. 56, organizing the Territory of Arizona, the district courts of the latter territory were given the same jurisdiction in all cases arising under the constitution and laws of the United States as is vested in the circuit and district courts of the United States. It follows that as the circuit courts of the United States have jurisdiction over the crime of murder committed within any fort, arsenal or other place within the exclusive jurisdiction of the United States,

so, prior to 1885, the district courts of a territory had juris-
diction over the crime of murder committed by any person
other than an Indian upon an Indian reservation within its
territorial limits, and that such jurisdiction has not been taken
away by the legislation of that year. The first contention of
petitioner therefore cannot be sustained."

And we also hereby reiterate the reasons so cogently ad-
vanced by the court in the opinion in the Goodson case, show-
ing that the case of the *United States v. Pridgeon* is not in
conflict with that decision.

Now it is not contended in this case by the counsel for
plaintiff in error that this is not Indian country; that is, that
the Osage Nation is not Indian country. In fact it is claimed
by plaintiff in error's counsel in his brief that it is Indian
country. There is no claim that it is not occupied by Indian
tribes, and there is no claim that the Indian title has been ex-
tinguished. Then, if this offense was committed in an Indian
country, occupied by Indian tribes, and where the title of the
Indian has not been extinguished, then, under the express
terms of the decisions of this court, in the Goodson case, the
district court of Pawnee county, to which that reservation was
attached for judicial purposes, had jurisdiction of the case.

The next contention on the part of the plaintiff in error
in this case is that the indictment is insufficient because it
fails to recite that the defendants were not Indians, and they
cite the cases of *Ex parte Gon-sha-yee,* 130 U. S. 343; *U. S. v.
Logan,* 105 Fed. 240.

In the case of *Ex parte Gon-sha-yee* the validity of the
indictment was in no way under consideration by the court,
and the court gives no light upon the point; in fact the in-
dictment is in no way discussed, so we are unable to say that

this case is of any weight in deciding the proposition advanced by counsel for plaintiffs in error. And in the last case cited on this proposition, to-wit, *Logan v. The United States,* it is there held by the court that in order to bring the defendant within the act approved March 3rd, 1885, the indictment must allege that he is not an Indian. This does not prove the proposition that where it is not claimed that the defendant charged with the crime is within the provisions of that particular act, and where the prosecution is not based on that act, that it is necessary that the pleader, in drawing the indictment, should put in the negative proposition that the defendant is not an Indian. Proof of that fact would only be necessary where it was sought by the prosecution to bring the defendant within the provisions of that act, or where it is sought on the part of the defendant to bring him within the exceptions of that act. We do not think it is at all necessary in an indictment brought under another section, and which has no reference to the act of March 3rd, 1885, which relates to Indians, that the indictment should charge that the defendant was not an Indian.

The next error complained of is that the record fails to show that the defendants were present at every step of the trial, and plaintiff in error calls our attention to the record pages 6, 7, 8, 9, 10, 11, 12, 14 and 15, to show that two of the defendants, Joe Brown and Daniel Brown, were not present. We think this position is not maintained and borne out by the record. Page six of the record is that portion of the record which relates to the fixing of bail, and it shows in express terms that Joe Brown, ——— Brown, Dan Herd and Pearl Rogers, all of the defendants named in the indictment,

were present in open court.   Page 7 seems to be the same as
page six, page six of the record having been also marked page
seven.   On the pages marked eight and nine of the record,
which show the proceedings on the 24th of May 1900, and are
that part of the record which shows an application of the de-
fendants for a continuance, it is expressly shown by the record
that all of the defendants were present in open court.   Page
eleven, which is that portion of the record which shows an ap-
plication on the part of the defendants for a change of judge,
also shows all of the defendants present.   On page twelve,
which is that portion of the record which shows the setting
of the case for trial, the showing is that Dan Herd *et al.* were
present.   Page fourteen of the record, as to the presence of
the defendants, shows that Dan Herd *et al.* were present.
This record shows that the only thing done in the case was
that defendant's counsel appeared and asked for orders for
witnesses to be allowed at the expense of the United States;
and page fifteen, which shows as to the presence of the de-
fendants that Dan Herd *et al.* were present, and that the only
proceeding taking place in the case as shown by this record
was the granting of orders for witnesses for the defendants at
the costs of the United States.   Now the only pages of the
record that do not show affirmatively, that these defendants
were present, were these last pages mentioned, which show,
as to the presence of the defendants that Dan Herd *et al.*
were present, and the record discloses that the only action
taken at this time was the fixing of the date for trial, and the
granting of the request on the part of the defendants for
witnesses at the cost of the United States, which certainly
could not be in any way prejudicial to the interests of the
defendants.

The next error as contended for by the counsel for the plaintiffs in error is, that the record fails to show the entering of the plea to the indictment and the arraignment of the defendants, Joe Brown and Dan Brown. We find on a page of the record which does not seem to be numbered, but comes just the page ahead of page 10, and after page 7, and is that part of the record which shows that the defendants, Joe Brown, ——— Brown, Dan Herd and Pearl Rogers, all appeared in their own proper persons in open court, and the court after advising the defendants of their rights to have counsel, before being arraigned, ask the defendants if they have counsel, and said defendants each for himself answers no, and waives the right to have counsel. Being asked by the court if Joe Brown, ——— Brown and Dan Herd and ·Pearl Rogers are their true names, answer each for themselves, as their name is called, yes, and ——— Brown announces his name to be Bert Brown.

The record further discloses:

"And now comes the defendants Joe Brown, Bert Brown, Dan Herd and Pearl Rogers, and announce to the court that they are ready at this time to plead to the indictment, and waive their one day allowed them by law in which to plead. And being asked by the court what is their plea to said indictment the defendants each for himself answers not guilty. And thereupon the clerk at once makes the following entry on the minutes of the court, to-wit: 'The defendants each plead that they are not guilty as charged in the indictment.'"

The page of the record just referred to is not numbered, but on the back of the page we find the certificate of the clerk of the district court, that the same is a true and correct copy of the original arraignment and plea, on file and of rec-

ord in his office, at Pawnee, O. T., signed by the clerk and attested with the seal of the court. Therefore we think that there is no doubt but the last two assignments of error on the part of the plaintiffs in error, are not borne out by the record.

For the reasons herein stated, the action of the district court of Pawnee county is affirmed, at the costs of the plaintiffs in error.

Burwell, J., who presided in the court below, not sitting; all the other Justices concurring: