## GON–SHAY–EE, Petitioner.

ORIGINAL.

No. 7. Original. Argued March 18, 1889. — Decided April 15, 1889.

The act of March 3, 1885, 23 Stat. 385, c. 341, § 9, was enacted to transfer to Territorial Courts, established by the United States, the jurisdiction to try the crimes described in it (including the crime of murder), under territorial laws, when sitting as and exercising the functions of a Territorial Court; and not when sitting as or exercising the functions of a Circuit or District Court of the United States under Rev. Stat. § 1910.

PETITION for a writ of *habeas corpus.* The case is stated in the opinion of the court.

*Mr. W. H. Lamar* for the petitioner. *Mr. Samuel Field Phillips* and *Mr. J. G. Zachry* were with him on the brief.

*Mr. Solicitor General* opposing.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a petition for a writ of *habeas corpus* to be directed to the marshal of the United States for the Territory of Arizona, who, it is alleged, holds the petitioner under a judgment of the District Court of the United States for the Second Judicial District of that Territory, which condemned him to death for the crime of murder. This crime is alleged in the indictment to have been committed by the defendant, an Apache Indian, within said district, naming no county or other location.

The allegation of the petitioner is that the court which tried him had not at that time, and in the mode of trial which was pursued, any jurisdiction of the case against him. It is argued

by counsel and alleged in the petition that the District Courts of the United States in the Territory of Arizona, as in all other Territories, have two distinct jurisdictions: that in the one they sit to exercise the powers and to try the same class of cases that the Circuit Courts of the United States do within the States and in the same manner, while in the other they sit as courts having jurisdiction of the ordinary contests between private parties and of criminal offences arising under the territorial laws.

The controversy in this case seems to turn upon the question whether the offence for which Gon-shay-ee was tried was an offence against the laws of the United States, and was of that character which ought to have been tried by the court sitting to try such cases, or whether it was an offence against the laws of the Territory, and should have been tried under those laws and by the court sitting to administer justice under them. The petitioner alleges that the offence with which he was charged was of the latter class, but that he was tried by the court while it was exercising its functions under the former.

The record of the case commences with the following statement of the finding of the indictment:

"In the District Court of the Second Judicial District, County of Maricopa, Territory of Arizona.

"May Term, A.D. 1888, sitting for the trial of all cases arising under the Constitution and laws of the United States, and having and exercising the same jurisdiction in all cases arising under the Constitution and laws of the United States, as is vested in the Circuit and District Courts of the United States, at a term thereof held at the city of Phœnix, in the county of Maricopa, in said district and Territory, on the 29th day of May, A.D. one thousand eight hundred and eighty-eight.

"The United States of America | 
v. } Indictment.
Gon–shay–ee. |

"Second Judicial District, *Territory of Arizona.*

"The grand jurors of the United States of America, within and for the Second Judicial District, Territory of Arizona,

being duly impanelled, sworn, and charged to inquire within and for the body of said district, of all offences committed therein against the United States of America, upon their oath present: That Gon-shay-ee, an Apache Indian, late of the Second Judicial District, Territory of Arizona, with force and arms, in said district and Territory, on or about the 5th day of June, A.D. one thousand eight hundred and eighty-eight, and before the finding of this indictment, did then and there feloniously, wilfully, deliberately, premeditately, and with malice aforethought, make an assault on a human being, to wit, William Deal, in the peace of the United States then and there being, and with a certain gun, which then and there was loaded with gun-powder and a leaden bullet, and by him, the said Gon-shay-ee, had and held in his hands, he, the said Gon-shay-ee, did then and there feloniously, wilfully, deliberately, premeditately, and with malice aforethought, shoot off and discharge at, to, against, and upon the said William Deal, thereby and by thus striking the said William Deal with the said leaden bullet, inflicting on and in the body of him, the said William Deal, one mortal wound, of which mortal wound the said William Deal then and there instantly died.

"And so the grand jurors aforesaid, upon their oath aforesaid, do say that the said Gon-shay-ee, an Apache Indian, in the manner and form aforesaid, and at the time and place aforesaid, did him, the said William Deal, feloniously, wilfully, deliberately, premeditately, and with malice aforethought, kill and murder, against the peace of the United States and their dignity, and contrary to the form of the statute in such case made and provided.

"O. T. Rouse,<br>
"<em>United States Attorney</em>."

The record of the final judgment of the court is in the following language:

"UNITED STATES OF AMERICA.

"DISTRICT COURT, SECOND JUDICIAL DISTRICT OF ARIZONA. Having and exercising the same jurisdiction under the Constitution and laws of the United States as is vested in the District and Circuit Courts of the United States.

"Regular May Term, A.D. 1888.

"June 14, A.D. 1888.

"Present: Hon. Wm. W. Porter, District Judge.

"UNITED STATES OF AMERICA, Plaintiff, }
v. } Convicted of
GON-SHAY-EE, Defendant. } Murder.

"The defendant, being present in open court in person, and by his counsel, H. N. Alexander and L. H. Chalmers; the United States attorneys, O. T. Rouse and Joseph Campbell, present on the part of the United States. And this being the time heretofore fixed for passing judgment on the defendant in this case, the defendant Gon-shay-ee was duly informed by the court of the nature of the indictment found against him for the crime of murder committed on or about the 5th day of June, A.D. 1887; of his arraignment, and plea of 'not guilty as charged in the indictment;' of the trial, and the verdict of the jury on the 4th day of June, A.D. 1888, guilty of murder as charged in the indictment.

"The defendant was then asked if he had any legal cause to show why judgment should not be pronounced against him; and no sufficient cause being shown or appearing to the court, thereupon the court renders its judgment that, whereas you, Gon-shay-ee, having been duly convicted in this court of the crime of murder, it is found by the court that you are so guilty of said crime. It is considered and adjudged, and the judgment of the court is, that you, Gon-shay-ee, be removed hence to the county jail of Maricopa County, or some other place of secure confinement, and there be securely kept until Friday, the 10th day of August, A.D. 1888, and on that day you be taken by the United States marshal of the Territory of Arizona, to and within the yard of the jail of said Maricopa County,

Arizona, and between the hours of nine o'clock A.M. and five o'clock P.M. of that day, by said marshal, you be hanged by the neck till you are dead."

It is very clear from these transcripts of the proceedings in the court below that on this trial it proceeded and considered itself as acting as a court for the trial of offences arising under the Constitution and laws of the United States, and as administering them with the same powers as those vested in the Circuit and District Courts of the United States generally. The grand jurors are described as "the grand jurors of the United States of America within and for the Second Judicial District, Territory of Arizona, being duly impanelled, sworn and charged to inquire within and for the body of said district, of all offences committed therein against the United States."

The court was held in the city of Phœnix, in the county of Maricopa, and the offence is described as having been committed within the Second Judicial District of the Territory, without any further reference to the county in which the act was done. In the final judgment of condemnation it is declared to be rendered in the "District Court, Second Judicial District of Arizona, having and exercising the same jurisdiction under the Constitution and laws of the United States as is vested in the District and Circuit Courts of the United States." Both the grand and the petit jurors were summoned by the marshal of the United States, and the execution of the sentence was imposed upon that officer, who now holds the prisoner in custody under it.

If the court which tried the prisoner had been sitting for the trial of offences committed against the territorial law, all this would have been different. The grand jury would have been summoned for the county in which the act was committed, and from the body of that county, by its sheriff, and the case would have been tried by the court sitting in that county, unless for exceptional reasons, which do not appear in this case. The prisoner would, on conviction, have been held by the sheriff, who would have had the execution of the sentence committed to him under a warrant from the court.

All these circumstances are so variant, in the nature of the

jurisdiction and the mode in which it must be exercised, that the conviction of the prisoner under the one mode by the law prescribed for the procedure under the other cannot be held to be within the power of the court which proceeded under the wrong jurisdiction. That there exists this system of a distinct jurisdiction, administered by the same court, in the Territory of Arizona, as it does in nearly all the others, is undoubted. The language of § 1910 of the Revised Statutes points very clearly to this distribution of the functions of the courts of the United States in the Territories. It reads as follows:

"Each of the District Courts in the Territories mentioned in the preceding section shall have and exercise the same jurisdiction, in all cases arising under the Constitution and laws of the United States, as is vested in the Circuit and District Courts of the United States; and the first six days of every term of the respective District Courts, or so much thereof as is necessary, shall be appropriated to the trial of causes arising under such Constitution and laws; but writs of error and appeals in all such cases may be had to the Supreme Court of each Territory, as in other cases."

It may be safely assumed that the practice of the territorial courts, from their first organization, has been to observe this separation of their functions. The payment of the expenses of the court, while sitting, as it declares in the caption above quoted, to administer the laws of the United States, with the same jurisdiction as is vested in the Circuit and District Courts of the United States, is made by the Federal government, on accounts kept and rendered by its officers; while the same courts, when held within the different counties of the Territories to administer the territorial laws, whether criminal or civil, are paid by the county, or in some other mode prescribed by the legislature of the Territory.

The following language was used by this court in *Ex parte Crow Dog*, 109 U. S. 556, 560:

"The District Court has two distinct jurisdictions. As a territorial court it administers the local law of the territorial government; as invested by act of Congress with jurisdiction to administer the laws of the United States, it has all the

authority of Circuit and District Courts; so that, in the former
character, it may try a prisoner for murder committed in the
Territory proper, under the local law, which requires the jury
to determine whether the punishment shall be death or im-
prisonment for life, Laws of Dakota, 1883, c. 9; and, in the
other character, try another for murder committed within the
Indian reservation, under a law of the United States, which
imposes, in case of conviction, the penalty of death."

Sec. 2145 of the Revised Statutes extends the general laws
of the United States as to the punishment of crimes committed
in any place within their sole and exclusive jurisdiction, except
the District of Columbia, to the Indian country, and it becomes
necessary, therefore, to inquire whether the locality of the
homicide, for which the prisoner was convicted of murder, is
within that description.

The question in this case is whether the offence charged
against Gon-shay-ee was one committed against the laws of
the United States, within the meaning of the distinction which
we have been taking; or whether it was an offence against the
laws of the Territory, to be punished by a court proceeding
under its laws. It may be conceded that prior to the statute
of 1885, so far as Indians could be punished for offences of this
kind in any court, either Federal or territorial, the jurisdiction
would belong to the one sitting under the first branch and
exercising the judicial functions appropriate thereto. It is
clearly otherwise by the act of March 3, 1885, 23 Stat. 385,
c. 341, § 9. The only portion necessary for our present consid-
eration is the ninth section, which reads as follows:

"That immediately upon and after the date of the passage
of this act, all Indians, committing against the person or prop-
erty of another Indian or other person any of the following
crimes, namely, murder, manslaughter, rape, assault with in-
tent to kill, arson, burglary and larceny, within any Territory
of the United States, and either within or without an Indian
reservation, shall be subject therefor to the laws of such Terri-
tory relating to said crimes, and shall be tried therefor in the
same courts and in the same manner, and shall be subject to
the same penalties, as are all other persons charged with the

commission of said crimes respectively; and the said courts are hereby given jurisdiction in all such cases; and all such Indians committing any of the above crimes against the person or property of another Indian or other person within the boundaries of any State of the United States, and within the limits of any Indian reservation, shall be subject to the same laws, tried in the same courts and in the same manner, and subject to the same penalties, as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States."

This is the last section of the Indian appropriation bill for that year, and is very clearly a continuation of the policy upon which Congress entered several years previously, of attempting, so far as possible and consistent with justice and existing obligations, to reduce the Indians to individual subjection to the laws of the country and dispense with their tribal relations. This matter was fully commented upon in the case of *Crow Dog*, already referred to, and in *United States* v. *Kagama*, 118 U. S. 375, in which the whole history of the relations between the United States and the Indians was discussed.

The latter case arose under the statute of 1885, now under consideration, which was construed in the opinion of the court, and the distinction clearly pointed out between offences committed against the laws of the United States, within the limits of an organized State of the Union, and those committed within the Territories. It is there declared that the enactment is clearly separable into two distinct definitions of the conditions under which Indians may be punished for the same crimes. The first is where the offence is committed within the limits of a territorial government, whether on or off an Indian reservation, and "the second is where the offence is committed by one Indian against the person or property of another, within the limits of a State of the Union, but on an Indian reservation."

In that case the offence was charged to have been committed within the boundaries of a State of the Union, and the Indian was tried in the Circuit Court of the United States for the District of California, from which a certificate of a divis-

Opinion of the Court.

ion of opinion was made to this court, embracing the question whether a murder committed by an Indian on the reservation of Hoopa Valley in that State could be tried in that court. We held that the statute gave this jurisdiction, and that it was constitutional. Incidentally, however, in remarking upon cases of crime committed by Indians in the Territories, the court said that "in this class of cases the Indian charged with the crime shall be judged by the laws of the Territory on that subject and tried by its courts."

The distinction between the trial in such cases by a court sitting as a Circuit Court of the United States to try offences against the Federal laws, and that in which it sits as a territorial court to punish crimes against the laws of the Territory, was not clearly stated in that opinion. We have already shown that such a distinction exists, and have little hesitation in holding that under the act of 1885 the case of Gon-shay-ee should have been considered as an offence against the laws of the Territory. That statute evidently intended to provide for the punishment of all cases of "murder, manslaughter, rape, assault with intent to kill, arson, burglary and larceny," committed by Indians within any Territory of the United States, whether within or without an Indian reservation, and the declaration is clear that they "shall be subject therefor to the laws of such Territory relating to said crimes, and shall be tried therefor in the same courts and in the same manner, and shall be subject to the same penalties, as are all other persons charged with the commission of said crimes respectively."

These Indians, then, are subjected by this statute not to the criminal laws of the United States but to the laws of the Territory. The statute does not even define the crimes of murder, manslaughter, etc., but this must be governed by the laws of the Territory, so far as they furnish any definition of the crime. There is no language which declares that they shall be tried in the courts of the United States under the same circumstances as similar offences committed by Indians within the States; but the second provision, which prescribes the punishment of the same offences when committed by Indians if within the boundaries of any State, and within the limits

of any Indian reservation, declares that they " shall be subject to the same laws, tried in the same courts, and in the same manner, and subject to the same penalties, as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States."

This phrase, " within the exclusive jurisdiction of the United States," is well understood as applying to the crimes which are committed within the premises, grounds, forts, arsenals, navy-yards, and other places within the boundaries of a State, or even within a Territory, over which the Federal government has by cession, by agreement, or by reservation exclusive jurisdiction. Those cases are tried by Circuit or District Courts of the United States, administering the laws of the United States, and not by the courts of the State or those of the Territory. The framers of this act were very careful, in this part of the statute, where the offence was committed within the territorial limits of a State, to declare that a violation of the laws of the United States in regard to these crimes of murder, etc., should be tried in the courts exercising the jurisdiction of the United States to punish offences against the United States.

With regard to the Territories, however, it is different. The declaration is that the Indians shall be tried by the courts of the Territory, and according to its laws, and shall be subject to the penalties which those laws prescribe. They are to be tried in the same manner and in the same courts as are all other persons charged with the commission of said crimes respectively, and the said courts are given jurisdiction in all such cases. It will be observed also that this part of the statute makes no distinction in regard to whether the crime was committed by the Indian on or off an Indian reservation.

We do not entertain any doubt that this part of the statute was enacted to transfer to the territorial courts established by the general government, as all courts of general jurisdiction are in the Territories, the jurisdiction to try the crimes described in it under the territorial laws, when sitting as and exercising the functions of such territorial court, as pointed out in the case of *Crow Dog*.

The distinctions incident to this mode of trial have already been indicated. They are important, relating to the jurisdiction, and concerning the life and the liberty of the party, against whom a crime is charged. Whether a man shall be tried in the county where the offence was committed, or carried to some other county, perhaps hundreds of miles distant, is a matter of much consequence; it is of the venue of the trial. Whether he shall be tried by a jury summoned by the marshal of the United States from the whole Territory, or from a section of it, amounting possibly to one-third of its extent, or by a jury of the county in which the act was done by the sheriff of the county, is of much moment to him; so also as to whether he shall be indicted by a grand jury summoned to serve for the county, and residents of the county, or by such a body summoned from the whole Territory.

It is of consequence that in this new departure which Congress has made, of subjecting the Indians, in this limited class of cases, to the same laws which govern the whites within the Territories where they both reside, the Indian shall at least have all the advantages which may accrue from that change, which transfers him, as to the punishment for these crimes, from the jurisdiction of his own tribe to the jurisdiction of the government of the territory in which he lives.

*We are of opinion that the writ of habeas corpus should issue as prayed for in this case; and it is so ordered.*