PEOPLE, PLAINTIFF AND APPELLEE, *v.* BARAGAÑO, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Humacao in a Prosecution for a Violation of the National Prohibition Act.

No. 2298.—Decided February 18, 1925.

PROHIBITION—PROCESS IN NAME OF PEOPLE OF PORTO RICO—CONCURRENT JURISDICTION.—A complaint for an offense against the prohibition law running in the name and under the authority of The People of Porto Rico complies with the provisions of section 10 of the Jones Act. The Congress of the United States had power to pass the Act of September 21, 1922, conferring concurrent jurisdiction upon the insular courts in violations of the National Prohibition Act and its intention was to consider the said act as a local law, in so far as its enforcement is concerned, as if it had been enacted by the Legislature of Porto Rico. *People v. Rodríguez et al.,* decided June 17, 1924.

ID.—MUNICIPAL COURTS—TERRITORIAL COURTS.—The municipal courts, as a part

of the judiciary of Porto Rico, are territorial courts within the meaning of
the Act of Congress conferring upon them jurisdiction of offenses against the
prohibition law and have, therefore, such jurisdiction, as was impliedly held
in the case of *People* v. *Rodríguez et al.* on June 17, 1924.

The facts are stated in the opinion.

*Messrs. C. Travecier* and *A. Aponte* for the appellant.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

This is a prohibition case. On appeal the District Court of Humacao sentenced the defendant to pay a fine of $25 and the costs for a violation of the National Prohibition Act.

The appellant assigns the following errors:

1. Lack of jurisdiction because the complaint runs in the name of The People of Porto Rico and not in the name of the United States although it charges the violation of a national law.

2. Erroneous weighing of the evidence by the trial judge.

The question involved in the first assignment of error was discussed and decided by the Supreme Court in the case of *People* v. *Rodríguez et al.,* decided June 17, 1924, *ante,* page 379. In that case the title of the complaint was worded as in this case and it was held that the complaint running in the name and under the authority of The People of Porto Rico complied with the provisions of section 10 of our Organic Act, commonly known as the Jones Act. Among other things upon which that conclusion was founded, it was held that Congress had power to pass the Act of September 21, 1922, conferring concurrent jurisdiction upon the insular courts in cases of violations of the National Prohibition Act and that its clear intention was to consider the said act as a local law, in so far as its enforcement is concerned, as if it had been enacted by the Legislature of Porto Rico.

In connection with this assignment it seems well to say

that some time ago and because of its discussion, the Department of Justice of this Island referred the matter to the War Department, and the *Fiscal* of the Supreme Court accompanies his additional brief with a copy of the opinion given on the matter by the Acting Judge Advocate General of the War Department.

Considering the intrinsic merit of the said opinion and the fact that it strengthens our conclusions in the said case concerning the power of Congress to pass the Act of September 21, 1922, as well as its clear intention to look upon the said act as a local law when enforced by the insular courts under their system of procedure, a transcript of it is important. It reads as follows:

"1st Indorsement.
"War Department, Bureau of Insular Affairs, Washington, D. C., November 15, 1922.—To the Judge Advocate General of the Army, inviting attention to the last paragraph of the letter of the Attorney General of Porto Rico.

Incl.                                   FRANK MACINTYRE,
                                             Chief of Bureau.

"Civil
Trent-kjw
JAG. 250. 1                        2nd Ind.
War Department, J. A. G. O.
        December 15, 1922. To the Chief, Bureau of Insular Affairs.
"1. By first indorsement hereon the letter of the Attorney General of Porto Rico, dated Nov. 8, 1922, and addressed to the Chief, Bureau of Insular Affairs, together with a copy of a letter of the said Attorney General, dated October 31, 1922, and addressed to the Honorable Arthur F. Odlin, Judge of the United States District Court of the District of Porto Rico, are forwarded to this office for an opinion upon the following questions:

"(a) 'Is it the duty of the Attorney General of Porto Rico and the officers of his department, in view of the Act of September 21, 1922, above copied, to take charge of the prosecution in the insular courts of offenses under the National Prohibition Act?' and,

"(b) 'In case the answer to the above question should be in the affirmative, should such prosecutions be conducted in the name of the United States or in the name of the People of Porto Rico?'

"The Act of September 21, 1922, is Public Law No. 327 of the 67th Congress and reads as follows:

" '*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That there be, and is hereby, conferred upon the Territorial magistrates and courts of Porto Rico jurisdiction · concurrent with the commissioners and courts of the United States for the said Territory of all offenses under the Act of October 28, 1919, known as the National Prohibition Act, and all Acts amendatory thereof and supplemental thereto, the jurisdiction of said Territorial magistrates and courts over said offenses to be the same which they now have over other criminal offenses within their jurisdiction.'

"2. Did the Act of September 21, 1922, make the National Prohibition Act and all Acts amendatory thereof and supplemental thereto Porto Rican laws which are now to be treated, in so far as the local authorities are concerned, as if they had been enacted by the Porto Rican Legislature and are to be dealt with as if the crimes thereby declared are crimes not against the United States but against *The People of Porto Rico?* Or, did the said Act make the 'Territorial magistrates and courts of Porto Rico' dual in their nature, sitting as local magistrates and courts when administering the laws of Porto Rico and as magistrates and courts of the United States when administering the National Prohibition Acts? If the latter, then the further inquiry arises as to which judicial machinery, including the prosecuting officers, the local magistrates and courts must employ in the administration of such Acts.

"The judicial system of Porto Rico prior to annexation to the United States comprised a Supreme Court, trial courts of general jurisdiction and municipal courts. The proceedings in all of these courts were conducted in the Spanish language and according to the forms of the civil law. By Section 33 of the Act of April 12, 1900, (31 Stat. 77, 84), these insular courts were continued. By Section 40 of the Act of March 2, 1917, (39 Stat. 951), the jurisdiction of these courts and the forms of procedure in them were further continued (Porto Rico Ry. Co. v. Mor, 253 U. S. 345). The Code of Criminal Procedure of Porto Rico provides that 'Every offense of which the district courts have original jurisdiction must be prosecuted by information filed by the prosecuting attorney, . . . (Compilations R. S. of P. R., Sec. 6014); that a criminal action is prosecuted in the name of 'The People of Porto Rico' (Id. 6016); that 'the style of all process shall be in the name of The People of Porto Rico' (Id. Sec. 6079); that the fiscal is the public prosecutor

(Id. Sec. 6111); that the clerk of the court shall turn over to the Insular Treasurer all monies collected or paid to him of *whatever character or nature* (Id. Sec. 6126); that issues of fact in cases of felony (and now also in cases of misdemeanor under the general penal law) shall be tried by a jury when the defendant or defendants or one of them so elects (Id. Sec. 6197); that a person is competent to act as juror if he be a male citizen of the United States or of Porto Rico of the age of twenty-one and not more than sixty-six years, etc. (Id Sec. 6208); and, that upon an appeal being taken to the Supreme Court of Porto Rico the secretary of the trial court must transmit to the Supreme Court various documents including the *bill of exceptions* (Id. Sec. 6400). The Penal Code of Porto Rico provides that a felony is a crime which is punishable with death or by imprisonment in *the penitentiary* and that every other crime is a misdemeanor (Id. Sec. 6420); and that, although a crime may be punishable by a fine not exceeding $5,000, or imprisonment in *jail* for a term not exceeding two years or both such fine and imprisonment, yet the crime is a misdemeanor and not a felony (Id. Sec. 5675). The Act of February 21, 1902, provides that in all the courts of Porto Rico the English language and the Spanish language shall be used indiscriminately, except the municipal or police courts to which the Act does not apply (Id. Secs. 1678, 1682). The Judiciary Act of March 10, 1904, as amended, divides Porto Rico into seven judicial districts and provides that each district judge shall have the qualifications therein set forth (Id. Secs. 1148, 1149).

"Section 41 of the Act of March 2, 1917, *supra,* provides that Porto Rico shall constitute a judicial district; that the President shall appoint one district judge, a district attorney, and a marshal; that the district court shall be called 'the District Court of the United States for Porto Rico'; and that such district court shall have jurisdiction as in the Section provided. Section 42 makes the laws of the United States relating to appeals, etc., applicable to the United States District Court for Porto Rico and declares that 'All pleadings and proceedings in said court shall be conducted in the English language'; and Section 44 provides:.

" 'That the qualifications of jurors as fixed by the local laws of Porto Rico shall not apply to jurors selected to serve in the District Court of the United States for Porto Rico; but the qualifications required of jurors in said court shall be that each shall be of the age of not less than twenty-one years and not over sixty-five years, a resident of Porto Rico for not less than one year, and

have a sufficient knowledge of the English language to enable him
to serve as juror; they shall also be citizens of the United States.
Juries for the said court shall be selected, drawn and subject to
exemption in accordance with the laws of Congress regulating the
same in the United States courts in so far as locally applicable.'

"It will thus be seen that the Porto Rican courts and the
United States District Court function separately and independently.
The Porto Rican courts sit for the trial of offenses committed
against the local laws. The juries are summoned for the judicial
district or province in which the criminal acts were committed, and
from the body of that district or province, by the local sheriff or
marshal. The qualifications of the jurors are fixed by the local
laws. The appellate supervision over the judgments and decrees
of these courts is vested in the Supreme Court of Porto Rico, with
the power of final review of the judgments and decrees of the Su-
preme Court in certain cases in the Supreme Court of the United
States and in the Circuit Court of Appeals for the First District.
The expenses of all the local courts are paid by Porto Rico, and
the disposition of all fines, fees, etc., as well as the place of con-
finement of the various prisoners serving final sentences, are gov-
erned by the laws of Porto Rico.

"The District Court of the United States for Porto Rico admin-
isters the criminal laws of the United States in force in the Island,
carrying on its proceedings exclusively in the English language.
The juries are summoned by the United States marshal from the
body of the entire district or Island. The qualifications of the ju-
rors are, in some respects, radically different from the qualifications
fixed by the local laws for jurors selected to serve in the local courts.
Criminal cases are prosecuted by the United States Attorney and
such cases are crimes against the United States. The appellate su-
pervision over the judgments and decrees of this court is vested in
the Supreme Court of the United States and in the Circuit Court
of Appeals for the First Circuit, depending upon the nature and
character of the particular case. All the expenses for the running
of the District Court for Porto Rico are paid by the United States,
and the disposition of all fines, fees, etc., as well as the place of
confinement of all prisoners serving final sentences, are governed
by the laws of the United States.

"All these circumstances are so variant, in the nature of the
jurisdiction and the mode in which it must be exercised, that a
conviction of a person by a territorial court under the procedure
prescribed for the United States District Court for Porto Rico, or

*vice versa,* would violate the 'due process of law' clause in the New Organic Act of March 2, 1917, *supra.* This proposition finds support in the case of Gen-Shay-EE, Petitioner, 130 U. S. 343. The result is that if the National Prohibition Acts have been made local laws by the Act of September 21, 1922, *supra,* they must be administered by the territorial courts in accordance with the Porto Rican Criminal procedure including the services of the local prosecuting officers; but if these Acts have not thus been made local laws, they must be administered by the territorial courts concurrently with the United States District Court and in accordance with the criminal procedure prescribed for that court including the services of the United States District Attorney.

"3. Whether the Prohibition Acts were made local laws or not must be determined by ascertaining the intention of Congress in passing the Act of September 21, 1922, for the intention of the law-makers is the essence of the law, there being no doubt about the power of Congress to pass the said Act. In pursuing this inquiry it is permissible and necessary to take into consideration the circumstances existing in Porto Rico at the time the Act was passed and the defects sought to be corrected.

"Porto Rico is about one hundred miles long and about forty miles wide. A large range of mountains traverses the Island from west to east. The working population is generally poor and ignorant, largely engaged in agriculture, cultivating small farms, raising sugar, tobacco and coffee. They had been accustomed all their lives and for generations to making rum from sugar for their own use and to sell to their neighbors. Large quantities of rum were also made by distillers for the general trade. The United States District Court holds two regular terms in San Juan and one in Ponce each year, and may hold a special term in Mayagüez but as a matter of fact the court has been able to hold only one special term there in three years. From San Juan to the most remote part of the Island is a long distance when considered from the standpoint of a majority of those who have to attend the Federal Court. The same is true in respect of Ponce. The Federal Judge states in his letter to Chairman Towner, quoted in the report on H. R. 9270, 'In case after case I imposed a nominal fine of $1 or $5, because if I had imposed more the victim would have had to go to jail for 30 days and his neighbors would have had to feed his wife and children, anywhere from three to eight in number. There are very many of these cases where the expense to the United States would run anywhere from $60 to $150.'

"The one United States District Court and the District Attorney cannot keep up with the work as will be seen from the docket. On October 1, 1922, there were pending 348 Criminal (Volstead) cases and from October 1, 1922, to December 1, 1922, there were filed 508 more of such cases.

"It was to partially relieve the people of Porto Rico of these hardships by bringing the administration of the Prohibition Acts nearer their homes and to relieve the United States Court from the congestion which prevents the work of that Court from being carried on with due regard to the interest of the public and the litigants that the Congress conferred upon the local magistrates and courts concurrent jurisdiction with the commissioners and Court of the United States of all offenses under the said Acts, and declared that 'the jurisdiction of said Territorial magistrates and courts over said offenses to be the same which they now have over other criminal offenses within their jurisdiction.' The concurrent jurisdiction is to be exercised by the two classes of tribunals at the same time and within the same territory; and wherein a prosecution, in the first instance, may be instituted in either class of tribunals indifferently. The term 'jurisdiction' is here used in its broad general sense, that of judicial power. It means the power to hear and determine any and all cases for the violation of the penal provisions of the Prohibition Acts, and to enforce the judgments, orders or sentences made or rendered in such cases. To do this the whole judicial machinery must be utilized, for the judge alone cannot, under either judicial system in Porto Rico, hear and determine criminal cases and enforce orders and sentences. The prosecuting attorney, the jury, and the sheriff or marshal are all essential to these ends. Without them this judicial power cannot be effectively exercised. The jurisdiction or judicial power conferred upon the magistrates and courts of Porto Rico by the Act of September 21, 1922, is 'to be the *same* which they now have over other criminal offenses within their jurisdiction.' That is, not differing in character or in quality from that conferred upon them by the Porto Rican laws. To hold that the local magistrates and courts are dual in character, being United States tribunals when administering the Prohibition Acts, would result in so much confusion and place so great a burden upon the United States District Attorney and his one assistant as to defeat the main purposes of the law-makers.

"4. I am therefore of the opinion that it is the duty of the Attorney General of Porto Rico and the officers of his department to take charge of the prosecution in the Insular courts of offenses under

the National Prohibition Acts and that such prosecutions should be conducted in the name of The People of Porto Rico. These conclusions are not in conflict with the holdings of the Supreme Court of Porto Rico in the case of People v. Torres, 28 P.R.R. 783, for in that case the court had under consideration certain provisions of Section 2 of the Act of March 2, 1917, *supra*.

J. A. HULL,
Acting Judge Advocate General."

However, at the hearing the appellant alleged that the *Rodríguez Case, supra,* did not decide the question of whether in extending the jurisdiction to the "territorial courts of Porto Rico"—to quote the words of the Act of September 21, 1922,—the Act referred to the district courts, that is, to the courts of record. And he maintained that the municipal courts have no jurisdiction of prohibition cases.

That question was impliedly decided in the said case, inasmuch as it came up originally from a municipal court. Besides, the appellant made no citation of jurisprudence or authorities in support of his contention.

It is not superfluous to say, however, that the term "territorial courts" used in the Act of Congress refers to our judiciary system as created by the Act reorganizing the judiciary of Porto Rico, etc., of March 10, 1904. This is one of the conclusions deduced from the opinion transcribed. Also, in Bouvier's Law Dictionary, Rawle's Revision, volume 2, page 1172, the following is said regarding territorial courts:

"*The Territorial Courts.* In the territories, the judicial power is vested in a supreme court, consisting of a chief justice and associate justices, who hold their offices for a term of four years, district courts, probate courts, and justices of the peace. In Arizona, the judicial power was vested in a supreme court and such inferior courts as the legislative council may by law provide, and under this power district and probate courts and justices of the peace were provided for; and by act of Feb. 11, 1891, congress provided for district courts to be held by a justice of the supreme court. These

territorial courts are not constitutional courts, that is, courts upon which judicial power is conferred by the constitution of the United States; but their powers and duties are conferred upon them by the acts of congress which created them. It is not necessary to specify these. For a detailed statement of the legislation on the subject, see 1 Garl. & Ralst. Fed. Pr. sec. 444. See, also, the titles on the several territories."

Corpus Juris treats of the judiciary of Porto Rico and refers to the insular courts as territorial courts, as may be seen from the following:

"Porto Rico—1. Territorial Courts. The judicial power of Porto Rico is vested in the courts and tribunals of Porto Rico as now established, namely the supreme court, insular district courts, municipal courts, and courts of justices of the peace." 25 C. J. 983.

In the second assignment of error the appellant maintains that the evidence did not establish the act of transportation because it did not appear that the automobile moved from the place where it was found containing the liquors. The evidence tended to show that a policeman saw some sacks on the sidewalk of the Spanish Club of Humacao and, suspecting that they contained liquors, walked toward the place and arrived after they had already been placed in an automobile which was standing in front of the said club. It was found that the sacks contained 27 bottles of champagne and 12 bottles of rum. The defendant was present and, pointing to the sacks, said to the policeman: "That is mine." The policeman then proceeded to arrest the defendant, who insisted that the policeman wait until he could speak to the sergeant in order to arrange the matter. In the presence of the sergeant the defendant admitted that the policeman had found the liquor in his possession and the sergeant then filed the complaint.

By virtue of these facts it seems useless to inquire further as to whether the offense was sufficiently established as specified in the complaint. It was not necessary that the automobile should move from its original position in order

that the offense should be consummated. The automobile itself was a means of transportation and the mere fact that the liquors seen outside of it were found inside of it implies that the offense was actually committed and also that it was the manifest intention of the defendant to commit it.

The evidence as a whole is sufficient to support the complaint and as the record shows no error, the judgment must be

*Affirmed.*

Chief Justice Del Toro and Justice Aldrey concurred. Justices Wolf and Hutchison dissented.

DISSENTING OPINION OF MR. JUSTICE WOLF.

The reasons for my dissent in this case have been set forth in *People* v. *Rodríguez et al.,* judgment of June 17, 1924, *ante,* page 379.