Wilson GRAY, Wesley Gray, James L. Frank, and Tully Tsosie, Appellants,

v.

UNITED STATES of America, Appellee.

No. 21409.

United States Court of Appeals Ninth Circuit.

Sept. 15, 1967.

As Revised on Denial of Rehearing May 2, 1968.

Lawrence C. Cantor, Phoenix, Ariz., for appellant Wilson Gray.

Arthur W. Vance, Jr., Window Rock, Ariz., for appellant James L. Frank.

Edward C. Rapp, Phoenix, Ariz., for appellant Wesley Gray.

Philip J. Shea, Phoenix, Ariz., for appellant Tully Tsosie.

Richard C. Gormley (now Edward Davis), U. S. Atty., Lawrence Turoff, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before CHAMBERS and BARNES, Circuit Judges, and VON DER HEYDT, District Judge.

VON DER HEYDT, District Judge.

Now, therefore, the said opinion dated September 15, 1967, in the above entitled cause, is hereby withdrawn; and a new opinion is ordered to be filed, as follows:

On August 24, 1965, the appellants, all Indians, were indicted by the Grand Jury of the United States District Court of Arizona for violation of Title 18, U.S.Code, Section 1153, the crime of Rape on an Indian Reservation. All appellants entered pleas of "Not Guilty" and the cause was tried to a jury at Prescott, Arizona, in June of 1966. The jury found all appellants guilty, and sentence was imposed upon each on June 27, 1966. This appeal followed.

The facts, briefly, are these. The appellants attended a dance on the Navajo Reservation in the State of Arizona during the late evening hours of August 9, 1965. The four, together with two others, Jim Tsosie, age 12 and Wilson Blackwater, about the same age, left the dance at approximately midnight, and went to the area of the Dennehotso Chapter House on the Reservation. Nearby the Chapter House were four cabins, and other dwellings. Shortly after the group's arrival in the area, appellant Tully Tsosie went into one of the cabins, and thereafter a girl was heard to say, "Help, help." The other three, Wilson Gray, Wesley Gray, and James Frank, then entered the cabin, followed by Jim Tsosie and Blackwater. Jim Tsosie testified he observed all appellants taking turns "on top of the girl". All then left the cabin.

At approximately 12:45 a. m. the same night, one Linda Silverman, a non-Indian, appeared in an hysterical condition at the nearby trailer home of LaVerne and Leota Stellrecht, stating she had been raped by five of six men, and that she had bitten one of them on the lip. A small amount of blood was visible on her nightgown.

Miss Silverman was taken to a hospital where an examination was made by an attending physician, who testified as to certain discolored areas on her neck, that she had spermatozoan secretions within the vaginal cavity, and that the external genitalia were irritated and red.

Questioning of the four appellants by officers of the Navajo Police began on August 10, 1965, at 11:55 a. m., and ended at approximately 5:30 p. m. They later were charged with the crime and taken before a commissioner at Holbrook, Arizona.

Appellants cite twelve specifications of error. The court earlier has ruled as to those directed only at the appeal of James L. Frank. After oral argument, the Court, by order, reversed the conviction of James L. Frank on July 7, 1967. The Court found that the evidence was not sufficient to sustain the conviction as to Frank. Of the specifications remaining, we consider only three of them to merit the attention of the Court on appeal.

Appellants assign as error the refusal of the trial court to grant their motion to dismiss the indictment for the reason that Section 1153, 18 U.S.C., is unconstitutional "because the punishment pre-

scribed was based on race and therefore denied the defendants due process of law." The statute challenged, the so-called Ten Major Crimes Act, grants exclusive jurisdiction to the District Court over certain crimes, including rape, committed by Indians, on Indians or the persons of others on an Indian Reservation. The statute defines the crime of rape to be that of the state in which the offense was committed, and further provides by way of penalty that:

"* * * any Indian who commits the offense of rape upon any female Indian within the Indian Country, shall be imprisoned at the discretion of the court."

Since the victim of the crime involved here is not of Indian blood, the District Court imposed sentences under 18 U.S. C., Section 2031, which states:

"Whoever, within the special maritime and territorial jurisdiction of the United States, commits rape shall suffer death, or imprisonment for any term of years or for life."

Appellants point out that an Indian who rapes an Indian female "shall be imprisoned at the discretion of the court", while an Indian convicted of rape upon a non-Indian female "shall suffer death, or imprisonment for any term of years or for life".

 Section 1153, 18 U.S.C., is unconstitutional, appellants contend, because it vests in the Indian male "some type of advantage over other parties committing rape within the jurisdiction of the United States". We cannot agree with this contention. It has long been acknowledged that Congress, in the exercise of its constitutional power, has recognized and established for the Indian people a peculiar and protected status as wards of the Federal government. United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228 (1886). It has been urged that the wardship theory is now obsolete. In re Carmen's Petition, D.C., 165 F.Supp. 942 at 948 (1958), affirmed 9 Cir., 270 F.2d 809, certiorari denied, 361 U.S. 934, 80 S.Ct.

375, 4 L.Ed.2d 355, rehearing denied, 361 U.S. 973, 80 S.Ct. 585, 4 L.Ed.2d 553. The Court, in Carmen's Petition states:

"But, the Supreme Court of the United States has consistently rejected all arguments that Federal power to regulate the Indians has diminished as federal control has been relaxed. Thus the Court has held that the grant of national and state citizenship to the Indians in no way altered their status as wards of the Federal government. The Court has repeatedly stated that it rests with the Congress to determine when and how the national guardianship shall be brought to an end, and whether the emancipation shall at first be complete or only partial.

"In 1953, subsequent to the offense committed by Carmen, the Congress did substantially curtail the Federal guardianship over the California Indians by granting the State of California criminal and civil jurisdiction over Indians within all of the Indian Country in the State, subject to limited exceptions. 67 Stat. 588. This action was taken by the Congress only after careful study. It would certainly be presumptuous of this Court to substitute its judgment for that of the Congress and hold that this action should have been taken sooner, and that Congressional power to assert criminal jurisdiction over the California Indians had previously expired. Respondent's contention that the Ten Major Crimes Act is unconstitutional as applied to petitioner cannot be sustained." (Citations omitted)

Congress has seen fit to diminish the penalty to be imposed upon an Indian who is convicted of rape upon another Indian in Indian Country, by enacting the specific provisions contained in 18 U.S.C. § 1153, which mitigate the penalty that otherwise would be imposed under 18 U.S.C., Section 2031. Appellants here seek to challenge as unconstitutional this statute, enacted by the Congress, which is of benefit to them. We

cannot say that such a statute denies its beneficiaries due process of law. It remains for Congress to amend or repeal the section in question, and Congress must make that decision, not the Courts.

■ Appellants next assert confessions obtained were illegal because extracted during a period of unnecessary delay between arrest and presentment before a magistrate, and further, that the confessions were involuntarily made.

Appellants were questioned individually between 11:55 a. m. and 5:30 p. m. on August 10, 1965. The investigation was conducted by three officers of the Navajo police, two of whom spoke the Navajo language. At the conclusion of the questioning, each of the young men had talked with the officers and signed a written statement.

Rule 5(a), Federal Rules of Criminal Procedure, requires that an officer shall take an arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States.

Prior to trial, appellants moved to suppress the statements, and the trial judge, after exhaustive hearing, granted the motion as to those in writing. The judge further ruled at the conclusion of the hearing that the officers would be allowed to testify at the trial as to the conversations had with the appellants if a proper foundation for such testimony was laid by the Government. The officers so testified at the trial.

Appellants assert that they were under arrest at the time questioning first began. An examination of the record does not support this view. The Navajo officers had limited knowledge of the facts of the alleged crime at the time questioning of the appellants began on August 10. Their knowledge was confined to facts indicating that a truck belonging to James Frank had been observed in the area of the Dennehotso Chapter House the night before, that Tully Tsosie earlier on the previous evening had been

in the company of Frank, that a young lady apparently had been raped and had bitten one of her assailants on the lip. We cannot say that appellants, four in number, all of whom may or may not have been suspect on the morning of August 10, were subject to an unnecessary delay before presentment before the nearest United States Commissioner. The record reflects the following with reasonable certainty concerning the sequence, time of questioning, and events which led to the arrest of appellants:

1. The time of questioning on August 10, 1965, was as follows:

Tully Tsosie, 11:55 a. m. to 2:00 p. m., with time allowed to eat and rest.

James L. Frank, 2:00 p. m. to 3:00 p.m.

Wilson Gray, 3:00 p. m. to 4:35 p. m.

Wesley Gray, 4:35 p. m. to 5:00 or 5:-30 p. m.

2. The appellants all resided in the vicinity of the schoolhouse on the Reservation where the questioning took place.

3. Apparently two of the appellants voluntarily accompanied a police officer to the site of the questioning, and the other two voluntarily appeared when notified by employees of the school that they were wanted for questioning. No appellant was under arrest at the time of questioning.

4. On the day of the questioning, August 10, 1965, no arrests were made. It appears that after the four appellants were questiond, two other persons were also queried that same day, although the record is not completely clear as to how many others were questioned and exactly when.

5. The four appellants, after questioning was concluded, were all allowed to go home for the night (or at least to leave the schoolhouse), and were asked to return at 9:30 a. m. the next morning.

6. Between the termination of questioning on the evening of August 10, and 9:30 a. m. the following morning,

August 11, when the defendants returned to the schoolhouse as requested, the Navajo officers who had conducted the investigation went over their notes and contacted federal authorities, including the United States Attorney's office. It is reasonably clear from the record that no one had been arrested as of 9:30 a. m. August 11, 1965.

7. When the four appellants appeared on the morning of August 11, they were transported from the Dennehotso area of the reservation by automobile to Holbrook, Arizona, where the nearest United States Commissioner resided. The exact distance between Dennehotso and Holbrook does not appear in the record, although it evidently is considerable and entailed an automobile ride of some time. When the group arrived at Holbrook, charges were filed and the appellants arraigned.

Thus, we find the record reflects with reasonable certainy that no appellant was under arrest or detention until sometime after 9:30 a. m. on August 11, 1965. No point is raised with reference to any delay in the arrests nor could it properly be raised.

We note the record is not entirely clear as to details and the sequence of all events which led to the arrest of appellants. This, for the reason that the testimony of all witnesses, including that of appellants, at the hearing on the motion to suppress and during trial, was directed almost entirely to the issue of the voluntary nature of the statements, and not to any issue of undue delay. This issue, although mentioned in passing, was not seriously urged to the trial court during the hearing on the motion to suppress or the trial itself. The question of undue delay under Rule 5(a) as as serious issue in this case was raised for the first time on appeal.

█ While it is clear from its wording that Rule 5(a) imposes upon an officer the duty to bring a person accused of crime before a commissioner without unnecessary delay, there also rests with the officer the duty, reasonably and as rapidly as possible under the circumstances of the particular case, to investigate and question a suspect to determine if sufficient cause exists to charge him with the commission of a crime.

█ Whether or not undue delay occurred so as to make inadmissible statements made during the period of questioning must be determined upon the individual facts of each case. Carpenter v. United States, 4 Cir., 264 F.2d 565 (1959), cert. denied, 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548; Williams v. United States, 9 Cir., 273 F.2d 781 (1960), cert. denied, 362 U.S. 951, 80 S.Ct. 862, 4 L.Ed.2d 868; Goldsmith v. United States, 107 U.S.App.D.C. 305, 277 F.2d 335 (1960); Holt v. United States, 8 Cir., 280 F.2d 273 (1960), cert. denied, 365 U.S. 838, 81 S.Ct. 750, 5 L.Ed.2d 747; Caldwell v. United States, 338 F.2d 385 (1964), cert. denied, 380 U.S. 984, 85 S.Ct. 1354, 14 L.Ed.2d 277; United States v. Swartz, 4 Cir., 357 F.2d 322 (1966). Here four or more individuals were suspect, and a thorough investigation of the facts and circumstances surrounding the alleged crime was necessary before arrests could be made.

We quote with approval from United States v. Vita, 294 F.2d 524, Second Circuit (1961):

"Moreover, even if Vita had been involuntarily detained for questioning or had believed that he had no choice but accompany the F.B.I. agents to headquarters, we would not necessarily hold such detention to be an 'arrest' within the meaning of Federal Rule of Criminal Procedure 5(a). The rule does not apply to a case in which federal officers detain a suspect for a short and reasonable period in order to question him. * * *"

" * * * This prerogative of police officers to detain persons for questioning is not only necessary in order to enable the authorities to apprehend, arrest, and charge those who are implicated; it also protects those who

are readily able to exculpate themselves from being arrested and having formal charges made against them before their explanations are considered. * * * " (citations omitted)

" * * * We do not construe the omission from the Federal Rules of Criminal Procedure of any reference to a period in which a suspect may be detained for questioning to mean that such detention is prohibited. If we are to construe Rule 5(a) to require of federal officers that they formally arrest and bring before a committing magistrate all those whom they wish to question in regard to a crime that has been committed, we would be imputing to the draftsmen of the Rule the intention to prohibit effective police interrogation. We agree with our brethren on the Court of Appeals for the District of Columbia Circuit who cannot believe 'that the Supreme Court has forbidden the police to investigate crime'. Trilling v. United States, 1958, 104 U.S.App. D.C. 159, 260 F.2d 677, 700 * * *."

Under the circumstances disclosed by the record here, we find no unreasonable delay in bringing appellants before a United States Commissioner.

█ As stated earlier, prior to trial the Judge held a full and extensive hearing upon appellants' motion to suppress. Each of the appellants testified at this hearing, as did the officers of the Navajo police. The voluntary nature of the statements made by appellants was established at that hearing. We find no reason to disturb the trial court's finding in this regard.

Lastly, appellants contend that certain remarks made by the Assistant United States Attorney in his closing argument were improper, in that the prosecutor "testified" concerning matters that were otherwise not in evidence.

Linda Silverman, the victim of the crime, was not called at the trial as a witness by the Government. Instead, the Government called a psychiatrist who testified that he had treated Miss Sil-

verman subsequent to August 10, 1965, and that, in his opinion, it would be injurious to her health were she to be required to appear as a witness at the trial.

█ Counsel for appellants commented at length in their final arguments upon the failure of the Government to call Linda Silverman as a witness. Appellants overlook the critical fact that the remarks of the prosecutor of which they complain were made in rebuttal argument. We have examined the record and find the comments to be proper rebuttal under the circumstances.

The judgments as to appellants Wilson Gray, Wesley Gray, and Tully Tsosie are affirmed.