Thomas **HENRY**, Jr., Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 24987.

United States Court of Appeals, Ninth Circuit.

Sept. 16, 1970.

Certiorari Denied Jan. 18, 1971. See 91 S.Ct. 576.

---

John R. McDonough (argued), Los Angeles, Cal., for appellant.

Roger A. Pauley (argued), Atty., Dept. of Justice, Washington, D. C., Bart M. Schouweiller, U. S. Atty., Reno, Nev., Robert S. Linnell, Las Vegas, Nev., for appellee.

Before CHAMBERS and CARTER, Circuit Judges, and BYRNE,* District Judge.

BYRNE, District Judge:

Appellant was convicted on both counts of an indictment charging him and three companions, all Indians, with raping two twenty-year old non-Indian girls, within the confines of the Pyramid Lake Indian Reservation in Nevada in violation of 18 U.S.C. §§ 1152 and

---

* The Honorable William M. Byrne, United States Senior District Judge for the Central District of California, sitting by designation.

2031. Appellant was sentenced to concurrent seven-year terms of imprisonment.

Section 1152 provides:

"Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

"This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively."

Section 2031 provides:

"Whoever, within the special maritime and territorial jurisdiction of the United States, commits rape shall suffer death, or imprisonment for any term of years or for life."

Henry contends that the indictment is defective because it charges violations of §§ 1152 and 2031, whereas the charges should be violations of § 1153 of Title 18, United States Code.

Section 1153 provides (in relevant part):

"Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, rape, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to kill, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

"As used in this section, the offenses of rape and assault with intent to commit rape shall be defined in accordance with the laws of the State in which the offense was committed, and any Indian who commits the offenses of rape or assault with intent to commit rape upon any female Indian within the Indian country shall be imprisoned at the discretion of the court."

The appellant argues that the language of this statute, also known as the Major Crimes Act, is plain and clear on its face and should have been used in the indictment.

The government contends that despite the "or other person" language of § 1153, legislative history demonstrates that the section was intended to apply only to crimes committed by an Indian against *another Indian.*

According to the government, § 1153 was adopted against a backdrop of Congressional outrage over the effects of Ex Parte Crow Dog, 109 U.S. 556, 3 S. Ct. 396, 27 L.Ed. 1030 (1883) ousting federal territorial courts of jurisdiction over crimes committed by one Indian against another. In *Crow Dog* the court sustained the validity of a statute which *excluded* federal jurisdiction over.

" * * * crimes committed by one Indian against the person or property of another Indian (and to) *any Indian committing any offense in the Indian country who has been punished by the local law of the tribe * * *."* (emphasis supplied).

The statute construed by the *Crow Dog* court was § 2146 of the Revised Statutes first enacted in the Indian Intercourse Act of 1834. The statute by excluding from federal jurisdiction "any Indian committing any offense in the Indian country who has been punished by the local laws of the tribe" not only excluded from federal court jurisdiction cases involving Indian offenders and Indian victims, but also excluded cases in-

volving Indian offenders and non-Indian victims when the offense was covered by local laws of the tribe.

The inclusion in § 2146 of "any offense," which obviously includes *non-Indian victims*, demonstrates the reason why Congress included the words "or any other person" in § 1153. Contrary to the government's contention, the "other person" language cannot be disregarded as not being a Congressional remedy for the lacunae created by the *Crow Dog* decision. Just as Congress found it desirable to find a remedy for the ousting of federal jurisdiction over crimes committed by one Indian against another, it applied the same remedy for the ousting of federal jurisdiction over crimes committed by an Indian against "any other person."

In Gon-shay-ee, Petitioner, 130 U.S. 343, 9 S.Ct. 542, 32 L.Ed. 973 (1889), Gon-shay-ee, an Apache Indian, killed a non-Indian on an Indian Reservation in Arizona. He was convicted under the authority of § 1153 (then referred to as the Act of 1885). See also, Apapas v. United States, 233 U.S. 587, 34 S.Ct. 704, 58 L.Ed. 1104 (1913); United States v. Thomas, 7 Cir., 47 F. 488 (1891); Gray v. United States, 394 F.2d 96 (CA 9 1968).

█ Though the indictment was defective in that it should have been brought under § 1153, has the appellant suffered any prejudice?

The cases cited by Henry in support of his claim that "it has long been settled that a defendant cannot be indicted for an offense that he did not commit even though the proof may show that he violated a different statute," are inapposite.

In Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948) a trial judge instructed the jury that certain defendants were on trial for the offense of promoting an unlawful assembly (Section 2 of a state statute). In the State Supreme Court the defendants raised a number of constitutional objections to their convictions for violating the unlawful assembly provision. Without passing on their constitutional objections, the Arkansas Supreme Court held that the information filed against the defendants also made out a charge of using force or violence against another person in violation of *Section one* of the same statute.

The Arkansas Court's affirmance of the convictions was reversed by the United States Supreme Court, which held that the State Court had

> "affirmed their convictions as though they had been tried for violating § 1, an offense for which they were neither tried nor convicted.

> "No principle of procedural due process is more clearly established than that notice of the specific charge and a chance to be heard if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state and federal. (citation)."

Significantly, the court in *Cole* stated that if in fact the defendants were charged with violating section one, "it (was) doubtful both that the information fairly informed them of that charge and that they sought to defend themselves against such a charge; it is certain that they were not tried for or found guilty of it."

In contrast to *Cole*, our case presents an appellant (a) indicted under charges which are essentially the elements necessary for conviction under § 1153 [1] (b)

---

I. The trial judge instructed the jury as to the essential elements of the offense as follows:

"First: that the offense was committed within the Indian Country, as defined in these instructions.

"Second: that the defendant is an Indian and the victim is not an Indian.

"Third: that the defendant had sexual intercourse with the victim.

"And Fourth: that the act was committed forcibly and against the will of the victim."

The "offense of rape * * * (was) defined in accordance with the laws of the State in which the offense was com-

which were clearly specified in the indictment (albeit with erroneous reference to § 1152), (c) against which he mounted a defense in the trial court, and (d) which were contained in instructions to the jury.

■ Although the indictment made erroneous reference to § 1152, appellant Henry was not prejudiced and we conclude that the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The second issue raised by the appellant is stated as follows: "It is clear on its face that the system of Federal Criminal Law enacted by Congress for the Indian country, as set forth in Chapter 53 of Title 18, embodies a classification of offenders based on race, both in its guiding principle and its statutory form of expression. In respect of 13 major crimes, Indians—red men—are governed by Section 1153, while all other offenders—white, black, yellow, brown, or other—are governed by Section 1152. Appellant submits that this statutory scheme is unconstitutional under the Fifth Amendment of the Constitution of the United States."

The appellant argues, " * * * the second paragraph of Section 1153 provides that the crime of rape, when committed by an *Indian* within the Indian Country, shall be defined in accordance with the law of the State in which the offense was committed. Thus, if one of the four defendants indicted in this case had happened to be a (non-Indian), the question whether he had committed the crime of rape would have been determined by reference to Sections 1152 and 2031 of Title 18, whereas the same questions respecting the Indian defendants herein must, as we have shown above, be determined by the law of Nevada * * * *"

The appellant is in error as to the applicable law. If, as hypothesized by appellant, one of the four defendants had happened to be a non-Indian,—both the victims and the offender would be non-Indians, and the crime of rape would not have been determined by reference to §§ 1152 and 2031 as contended by the appellant, but by the law of Nevada. See United States v. McBratney, 104 U.S. 621, 26 L.Ed. 861 (1881); New York ex rel. Ray v. Martin, 326 U.S. 496, 66 S. Ct. 307, 90 L.Ed. 261.

Assuming the offender were a non-Indian and the victim an *Indian* (which of course is not our case), the crime would be in federal court under § 1152 (the Federal Enclave Law).[2] As we noted above, the elements of the crime of rape are essentially the same whether the prosecution be under § 1152 or § 1153.

The same question was raised by the appellant in Gray v. United States, 394 F.2d 96 (CA 9 1969), cert. den. 393 U.S. 985, 89 S.Ct. 459, 21 L.Ed.2d 446 (1969), who charged that § 1153 is unconstitutional "because the punishment prescribed was based on race and therefore denied the defendants due process of law." The court in *Gray* rejected the claim. As in instant case, the *Gray* offender was an Indian and the victim a non-Indian.

The constitutionality of § 1153 was also raised and rejected in Mull v. United States, 402 F.2d 571 (CA 9 1968); cert. den. 393 U.S. 1107, 89 S.Ct. 917, 21 L.Ed.2d 804 (1969). However, in Mull, the offender was an Indian and the victim was also an Indian.

■ As in *Gray* and *Mull*, we find the constitutional attack on § 1153 to be without merit.

We shall discuss appellant's remaining three issues briefly. He first contends that it was error for the trial court to

---

mitted, (Nevada) * * * *", as required by § 1153.

The Nevada statute (200.363 of the Revised Statutes) defines rape as "the carnal knowledge of a female against her will." This definition is almost universal.

2. Handbook of Federal Indian Law, Professor Felix Cohen, (published by the office of the Solicitor, United States Department of the Interior 1941), pg. 364.

fail to inform the jury that the prosecution had the burden of proving every element of the crime charged beyond a reasonable doubt when the jury was being instructed that a criminal defendant cannot be compelled to testify and that "no presumption of guilt may be raised and no inference of any kind may be drawn from the failure of the defendant to testify."

■ Although the appellant concedes that the instruction as given was correct under Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257 (1939), he argues that an instruction *combining* the burden of proof information and the caution against inferences based on the failure to testify would simply be a better instruction. Appellant's argument is frivolous on this point.

Next, Henry argues that the trial court erred in not instructing the jury that his intoxication could be taken into account in determining whether he had the requisite *intent* to commit rape.

Neveda has a *specific intent exception* to its general rule that voluntary intoxication is not an excuse for crime. In Section 193.220 of the Revised Statutes we find that

" * * * whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute a particular species or degree of crime, the fact of his (defendant's) intoxication may be taken into consideration in determining such purpose, motive or intent."

The federal rule is for all purposes identical to the Nevada statute. Kane v. United States, 399 F.2d 730, 736 (CA 9 1968). Furthermore, Nevada and federal courts generally define rape in the same manner: carnal knowledge of a female by force without her consent. See Carlton v. United States, 395 F.2d 10, 12 (CA 9 1968).

■ It is well established that a *general intent* is involved in the crime of rape. There is no merit to appellant's argument.

Lastly, appellant contends that he had a right to counsel while an F.B.I. agent was collecting pubic hairs from him when he was in custody. Although conceding that United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) holds that the presence of counsel is *not* required when, as a preparatory step in the gathering of prosecution evidence, hair is removed from a defendant, Henry asks this court to devise what he terms "an all-inclusive-notice-to-counsel rule" under *its supervisory power* over the district courts in the Ninth Circuit.

Regardless of the fact that acceding to appellant's request would run counter to the clear rule expressed in *Wade, supra,* this court has no supervisory power to devise rules of evidence for use in the district courts as suggested by appellant.

Until 1943, in the Anglo-American system of justice, the principle that appellate courts could reverse lower courts only when error was found in the judgment of the lower court, was never questioned. In McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), the Supreme Court announced the new doctrine that it had a supervisory power over lower courts which permitted reversal of judgments even in the absence of error. The McNabb court explained:

"In holding that the petitioners' admissions were improperly received in evidence against them, and that having been based on this evidence their convictions cannot stand, we confine ourselves to *our limited function as the court of ultimate review* of the standards formulated and applied by federal courts in the trial of criminal cases." (emphasis supplied)

■ A Court of Appeals is not "the Court of ultimate review" and its province as a court is limited to reversing lower courts *only when prejudicial error exists.*

It is true that members of a Court of Appeals, meeting as a Judicial Council, exercise certain supervisory powers for

the expeditious administration of the business of the courts within its circuit (28 U.S.C. § 332), but they act as a council, not a court.

We find this contention of appellant devoid of merit.

Affirmed.