EL PUEBLO, DEMANDANTE Y APELADO, *v.* BARAGAÑO, ACUSADO Y APELANTE.

No. 2298.—*Visto:* Noviembre 18, 1924. *Resuelto:* Febrero 18, 1925.

PROHIBICIÓN—DENUNCIA A NOMBRE DE EL PUEBLO DE PUERTO RICO—JURISDICCIÓN CONCURRENTE EN DELITOS CONTRA LA PROHIBICIÓN.—Una denuncia por delito contra la prohibición formulada a nombre y por la autoridad de El Pueblo

de Puerto Rico, cumple con lo dispuesto en la sección 10 del Acta Jones. El Congreso de los Estados Unidos tenía poder para promulgar la ley de 21 de septiembre de 1922 dando jurisdicción concurrente a las cortes insulares para conocer de las violaciones de la Ley Nacional de Prohibición y fué su intención considerar dicha ley, en sus medios de hacerla efectiva, como ley local, tal como si hubiera sido decretada por la Legislatura de Puerto Rico. *El Pueblo* v. *Rodríguez,* resuelto en junio 17, 1924, (pág. 393).

Id.— Cortes Municipales— Cortes ''Territoriales''.—Las cortes municipales, como parte del sistema judicial de Puerto Rico, son cortes ''territoriales'' dentro del significado de la Ley del Congreso confiriendo a éstas jurisdicción sobre los delitos de prohibición, y tienen, por consiguiente, tal jurisdicción, como implícitamente se resolvió en el caso de *El Pueblo* v. *Rodríguez* en junio 17, 1924, (pág. 393).

Sentencia de *Pablo Berga,* J. (Humacao), condenando al acusado por delito contra la Ley de la Prohibición Nacional. *Confirmada.*

C. *Travecier* y A. *Aponte,* abogados del apelante; *José E. Figueras, Fiscal,* abogado del apelado.

El Juez Asociado Señor Franco Soto, emitió la opinión del tribunal.

Este es un caso de prohibición. La Corte de Distrito de Humacao, en grado de apelación, condenó al acusado a pagar una multa de $25 y costas por haber infringido la Ley Nacional de Prohibición.

El apelante señala la comisión de los siguientes errores:

I. La falta de jurisdicción por estar autorizada la denuncia a nombre de El Pueblo de Puerto Rico y no a nombre de los Estados Unidos por tratarse de la violación de una ley nacional, y

II. La errónea apreciación, a su juicio, de la prueba por el juez inferior.

El primer señalamiento de error fué extensamente discutido y resuelto por esta Corte Suprema en el caso de *El Pueblo* v. *Rodríguez,* de junio 17, 1924 (pág. 393). En dicho caso el encabezamiento de la denuncia estaba redactado en igual forma que en este caso y se resolvió que la denuncia al ser formulada a nombre y por la autoridad de El Pueblo de Puerto Rico cumplía con lo que dispone la sección 10 de

nuestra carta orgánica (Acta Jones (Mar. 2, 1917, Fed. Stat. Ann. 1918). Entre otras declaraciones que se tuvieron como base para llegar a tal conclusión, se declaró el poder que tuvo el Congreso para promulgar la ley de 21 de septiembre de 1922 (Leyes de 1923, p. 97, Fed. Stat. Ann. 1922) dando jurisdicción concurrente a las Cortes Insulares para conocer de las violaciones de la Ley Nacional de Prohibición y de su clara intención de considerar dicha ley, en sus medios de hacerla efectiva, como ley local, tal como si hubiera sido decretada por la Legislatura de Puerto Rico.

En relación con este error parece oportuno decir que más antes, con motivo de su discusión, el Departamento de Justicia de esta Isla había consultado el asunto al Departamento de la Guerra y el Fiscal de esta Corte Suprema en su alegato adicional acompaña copia de la opinión emitida sobre la materia por el Acting Judge Advocate General del Departamento de la Guerra.

Atendido el valor intrínseco de dicho trabajo y robusteciendo como robustece nuestras conclusiones en aquel caso en cuanto al poder del Congreso para promulgar la ley de 21 de septiembre de 1922 y de su clara intención de considerar dicha ley como local cuando se aplicara por las cortes insulares en sus medios o procedimientos para darle cumplimiento, se hace conveniente transcribirlo. Dice así:

"PRIMER ENDOSO.

Departamento de la Guerra. Negociado de Asuntos Insulares. Washington, D. C., noviembre 15, 1922. Al Juez Procurador General del Ejército, invitando su atención al párrafo primero de la carta del Fiscal General de Puerto Rico.

Frank McIntyre,<br>Jefe del Negociado.

Incl.
Civil
Trent–kjw
Jag. 250.1
Departamento de la Guerra, J.A.G.O.
    Diciembre 15, 1922.

SEGUNDO ENDOSO.

Al Jefe, Negociado de Asuntos Insulares.

"1. Por este primer endoso la comunicación del Fiscal General de Puerto Rico, de fecha noviembre 8, 1922, y dirigida al Jefe del Negociado de Asuntos Insulares, junto con una copia de una comunicación de dicho Fiscal General, fechada en octubre 31, 1922, y dirigida al Hon. Arthur F. Odlin, Juez de la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico, han sido remitidas a esta oficina para una opinión sobre las siguientes cuestiones:

"(a) ¿Es el deber del Fiscal General de Puerto Rico y de los funcionarios de su departamento, en vista de la ley de septiembre 21, 1922, arriba copiada, hacerse cargo de los procesos ante las cortes insulares de los delitos por virtud de la Ley Nacional de Prohibición, y

"(b) En caso de que la contestación a la anterior pregunta fuera afirmativa, si deben seguirse tales procesos a nombre de los Estados Unidos o de El Pueblo de Puerto Rico.

"La Ley de septiembre 21, 1922, es el estatuto No. 327 del 67° Congreso, la cual es como sigue:

" 'Decrétese por el Senado y la Cámara de Representantes de los Estados Unidos de América, en Congreso reunidos, que se confiera como por la presente se confiere, a los jueces y cortes territoriales de Puerto Rico, jurisdicción concurrente con los comisionados y cortes de los Estados Unidos en aquel distrito, sobre toda infracción de la ley de octubre 28 de 1919, conocida por el nombre de Ley de Prohibición Nacional, y de cualquier ley enmendatoria y supletoria de la misma, siendo la jurisdicción de los referidos jueces y cortes territoriales en los casos de dichas infracciones la misma que en la actualidad tienen sobre otros delitos de su jurisdicción.'

"2. ¿Convirtió la ley de septiembre 21, 1922, a la Ley Nacional de Prohibición y a todas las leyes enmendatorias y supletorias a la misma en leyes de Puerto Rico que han de ser tenidas, en tanto hacen referencia a las autoridades locales, como si hubieran sido decretadas por la Legislatura de Puerto Rico y que han de ser consideradas como si los delitos en ellas declarados no son delitos contra los Estados Unidos sino contra el *Pueblo de Puerto Rico?* ¿O, dió dicha Ley a los 'magistrados territoriales y cortes de Puerto Rico' dos caracteres por su naturaleza, conociendo de dichos casos como magistrados locales y cortes al administrar las leyes de Puerto Rico y como magistrados y cortes de los Estados Unidos al aplicar las

leyes de Prohibición Nacional? .Si lo segundo, surge entonces la
pregunta de qué maquinaria judicial, incluyendo a los fiscales, los
magistrados locales y cortes, han de emplearse en la administración
de tales Leyes.

"El sistema judicial de Puerto Rico con anterioridad a la ane-
xión a los Estados Unidos comprendía una Corte Suprema, cortes
inferiores de jurisdicción general y cortes municipales. Los proce-
dimientos en todas las cortes se llevaban a cabo en el idioma español
y de conformidad con las formas de la ley civil. Por la sección 33
de la ley de abril 12, 1900, (31 Estatutos, 77, 84), estas cortes insu-
lares continuaron en vigor. Por la sección 40 de la ley de marzo
2, 1917, (39 Estatutos, 951), la jurisdicción de estas cortes y for-
mas de procedimiento en las mismas continuaron en vigor (Porto
Rico Ry. Co. v. Mor, 253 U. S. 345). El Código de Enjuiciamiento
Criminal de Puerto Rico prescribe que 'Todo delito respecto del cual
tuviere jurisdicción original la Corte de Distrito, deberá perseguirse
por virtud de acusación presentada por el fiscal. . . . . (Compila-
ción Estatutos Revisados de Puerto Rico, sec. 6014); que el pro-
ceso criminal se entabla a nombre de "El Pueblo de Puerto Rico"
(Id. 6016); que 'Todas las intimaciones u órdenes judiciales se dic-
tarán en nombre del "Pueblo de Puerto Rico" ' (Id. 6079); que el
fiscal es el acusador público (Id. sec. 6111); que el secretario de la
corte enviará al Tesorero Insular todo el dinero cobrado por él,
*cualquiera que fuere la clase o naturaleza de su procedencia* (Id.
sec. 6126); que las cuestiones de hecho en casos de delito grave (y
también ahora en casos de delitos menos graves bajo la ley penal
general) habrán de ser juzgados por el jurado, cuando el acusado
o acusados o cualquiera de ellos lo pidiere (Id., sec. 6197); que es
competente para actuar como jurado un individuo si fuere ciuda-
dano varón de los Estados Unidos o de *Puerto Rico,* de 21 años de
edad y de no más de 60 años, etc. (Id., sec. 6208); y, que al estable-
cerse una apelación para ante la Corte Suprema de Puerto Rico, el
secretario de la corte·inferior debe remitir a la Corte Suprema va-
rios documentos, incluyendo el *pliego de excepciones* (Id., sec. 6400).
El Código Penal de Puerto Rico prescribe que un *felony* es un crí-
men castigado con la pena de muerte *o de presidio* y que todos los
demás delitos son *misdemeanors* (Id., sec. 5420); y que aunque un
delito pueda ser castigado con multa que no exceda de $5,000, o
con *cárcel* por un término que no exceda de 2 años, o ambas penas,
multa y prisión, sin embargo, el delito es un *misdemeanor* y no un
.*felony* (Id., sec. 5420). La ley de febrero 21, 1902, prescribe que
en todos los tribunales de Puerto Rico se emplearán indistintamente

los idiomas inglés y español, excepto en los tribunales municipales o de policía, a los cuales no será aplicable la ley (Id., secs. 1678 y 1682). La ley para reorganizar el sistema judicial, de marzo 10, 1904, como fué enmendada, divide a Puerto Rico en siete distritos judiciales y prescribe que todo juez de distrito deberá reunir los requisitos que en ella se especifican (Id., secs. 1148, 1149).

"La sección 41 de la ley de marzo 2, 1917, *supra,* prescribe que Puerto Rico constituirá un distrito judicial; que el Presidente nombrará un juez de distrito, un fiscal de distrito y un márshal; que la corte de distrito se denominará 'la Corte de Distrito de los Estados Unidos para Puerto Rico;' y que tal corte de distrito tendrá la jurisdicción prescrita en dicha sección. La sección 42 hace las leyes de los Estados Unidos referentes a apelaciones, etc., aplicables a la Corte de Distrito de los Estados Unidos para Puerto Rico y declara que 'Todas las alegaciones y procedimientos en dicha corte se harán en el idioma inglés;' y la sección 44 prescribe:

" 'Las condiciones de los jurados, según se establecen en las leyes locales de Puerto Rico, no serán aplicables a jurados elegidos para actuar en la Corte de Distrito de los Estados Unidos para Puerto Rico; sino que las condiciones requeridas a los jurados en dicha corte serán, que cada uno de ellos sea mayor de veintiún años y no mayor de sesenta y cinco, residente en Puerto Rico por no menos de un año, y que tenga suficiente conocimiento del idioma inglés para poder servir de jurado debidamente; deberá ser también ciudadano de los Estados Unidos. Los jurados para dicha Corte serán elegidos, nombrados y sujetos a exención de acuerdo con las leyes del Congreso que reglamentan los mismos en las Cortes de los Estados Unidos, hasta donde dichas leyes sean localmente aplicables.'

"Se verá, pues, que las cortes de Puerto Rico y la Corte de Distrito de los Estados Unidos actúan separada e independientemente. Las cortes de Puerto Rico se constituyen para juzgar delitos cometidos contra las leyes locales. Los jurados son citados para el distrito judicial o demarcación en que los actos criminales fueron cometidos, y del conjunto de ese distrito o demarcación, por el márshal local. Los requisitos que deben reunir los jurados están fijados por las leyes locales. La supervisión de apelación sobre las sentencias y decretos de estas cortes está investida en la Corte Suprema de Puerto Rico, confiriéndose la facultad de hacer una revisión final de las sentencias y decisiones dictadas por la Corte Suprema en ciertos casos a la Corte Suprema de los Estados Unidos y a la de Circuito de Apelaciones para el Primer Circuito. Los gastos que ori-

ginan las cortes locales son satisfechos por Puerto Rico, y la disposición respecto a todas las multas, derechos, etc., así como a la reclusión de los varios prisioneros que cumplen sentencias, están regularizadas por las leyes de Puerto Rico.

"La Corte de Distrito de los Estados Unidos para Puerto Rico administra las leyes penales de los Estados Unidos en vigor en la isla, llevando a cabo sus procedimientos exclusivamente en el idioma inglés. Los jurados son citados por el márshal de los Estados Unidos y del conjunto de todo el distrito o isla. Las condiciones que deben reunir los jurados son, en algunos particulares, radicalmente distintas a las exigidas por las leyes locales a jurados elegidos para servir en las cortes insulares. Los casos criminales se siguen por el fiscal de los Estados Unidos y dichos casos son delitos contra los Estados Unidos. La supervisión de apelación sobre las sentencias y decretos de esta corte está investida en la Corte Suprema de los Estados Unidos y en la de Circuito de Apelaciones para el Primer Circuito, dependiendo de la naturaleza y carácter del caso en particular. Todos los gastos para el mantenimiento de la Corte de Distrito de Puerto Rico son satisfechos por los Estados Unidos, y la disposición sobre todas las multas, derechos, etc., así como al lugar de confinamiento de todos los presos que cumplen sentencias finales, están reguladas por las leyes de los Estados Unidos.

"Todas estas circunstancias son tan variables por la naturaleza de la jurisdicción y la forma en que ha de ejercitarse, que la condena de una persona por una corte territorial bajo el procedimiento prescrito por la Corte de Distrito de los Estados Unidos para Puerto Rico, o *viceversa,* infringiría la cláusula de 'debido procedimiento de ley' contenida en la nueva Ley Orgánica de marzo 2, 1917, *supra.* Esta proposición está sostenida en el caso de Gen–Shay–EE, peticionario, 130 U.S. 343. El resultado es que si las leyes de Prohibición Nacional han quedado convertidas en leyes locales por la ley de septiembre 21, 1922, *supra,* deben ser administradas por las cortes territoriales de acuerdo con el procedimiento criminal de Puerto Rico, incluyendo los servicios de los fiscales locales; pero si estas leyes no han sido de tal modo convertidas en locales, deben ser administradas por las cortes territoriales en concurrencia con la Corte de Distrito de los Estados Unidos y de conformidad con el procedimiento criminal prescrito para dicha corte, incluyendo los servicios del fiscal de la Corte de Distrito de los Estados Unidos.

"3. Si las leyes de Prohibición Nacional quedaron hechas locales o nó, es cuestión que puede determinarse fijando la intención del Congreso al pasar la ley de septiembre 21, 1922, pues la intención

del legislador es la esencia de la ley, no existiendo duda alguna en cuanto a la facultad del Congreso para aprobar la referida ley. Al seguir adelante en esta investigación puede tomarse y necesariamente se toma en consideración las circunstancias que existían en Puerto Rico en la fecha en que la ley fué aprobada y los defectos que tratan de corregirse.

"Puerto Rico tiene una superficie aproximada de 100 millas de largo y de 40 de ancho. Una cadena de montañas cruza la isla de oeste a este. La población dedicada al trabajo generalmente es pobre e ignorante, y ocupada principalmente en la agricultura, cultivo de pequeñas fincas, siembra de caña, tabaco y café. Ha estado acostumbrada toda su vida y por generaciones a la fabricación de ron de caña de azúcar para su propio uso y a la venta a sus convecinos. Grandes cantidades de ron se hicieron por destiladores para el comercio en general. La Corte de Distrito de los Estados Unidos celebra dos sesiones regulares en San Juan y en Ponce cada año, y puede celebrar una sesión especial en Mayagüez, pero como cuestión de hecho la corte sólo ha podido celebrar un término especial allí en tres años. Desde San Juan al punto más remoto de la isla hay una larga distancia cuando se considera desde el punto de vista de una mayoría de aquellos que tienen que comparecer a la Corte Federal. Lo mismo sucede con respecto a Ponce. El Juez Federal expresa en su comunicación al presidente Townér, citado en el informe H. R. 9270. 'En caso tras caso yo impuse una multa nominal de $1 a $5, porque si yo hubiera impuesta más la víctima hubiera tenido que ir a la cárcel por treinta días y sus vecinos hubieran tenido que alimentar a su esposa e hijos, que por lo general son de tres a ocho en número. Hay muchos de estos casos en los cuales el gasto para los Estados Unidos es de $60 a $150.'

"La Corte de Distrito de los Estados Unidos y el Fiscal no pueden tener al corriente el trabajo, como se verá del registro. En octubre 1, 1922, había pendientes 348 casos criminales (Volstead), y de octubre 1, 1922, a diciembre 1, 1922, fueron radicados otros 508 casos más.

"Fué para ayudar en parte al Pueblo de Puerto Rico en estas molestias, trayendo la administración de las leyes de Prohibición más cerca de ellos, y para evitar esta congestión de trabajo en la corte de los Estados Unidos, que impide que el trabajo de la corte se lleve a cabo con la debida atención a los intereses del público y de los litigantes, que el Congreso confirió a los magistrados y cortes locales jurisdicción concurrente con los comisionados y cortes de los Estados Unidos de todos los delitos comprendidos en dichas leyes,

y declaró que 'siendo la jurisdicción de los referidos jueces y cortes territoriales en los casos de dichas infracciones la misma que en la actualidad tienen sobre otros delitos de su jurisdicción.' La jurisdicción concurrente ha de ejercitarse por las dos clases de tribunales al mismo tiempo y dentro del mismo territorio; y donde un proceso, en el primer caso, puede ser seguido en una u otra clase de tribunal indistintamente. La palabra 'jurisdicción' se emplea aquí en su más amplio sentido general, la facultad judicial. Significa la facultad para oir y resolver cualquiera y todos los casos de violación de las prescripciones penales de las leyes de Prohibición, y para hacer cumplir las sentencias, órdenes o decretos dictados o rendidos en tales casos. Con este fin toda la maquinaria judicial debe ser utilizada, pues el juez solo no puede, con arreglo a uno u otro sistema judicial en Puerto Rico, oir y resolver casos criminales y hacer cumplir órdenes y sentencias. El fiscal, el jurado y el márshal y alguaciles son elementos esenciales todos para estos fines. Sin ellos esta facultad judicial no puede ser ejercitada eficazmente. La jurisdicción o facultad judicial conferida a los magistrados y cortes de Puerto Rico por la ley de septiembre 21, 1922, es 'la misma que en la actualidad tienen sobre otros delitos de su jurisdicción.' Esto es, que no se diferencia en su naturaleza o esencia de la conferida a ellos por las leyes de Puerto Rico. Resolver que los magistrados locales y cortes actúan con el doble carácter, siendo tribunales de los Estados Unidos cuando administran las leyes de Prohibición, resultaría tal confusión e impondría un gravamen tan grande al Fiscal de la Corte de Distrito de los Estados Unidos y a su único auxiliar, que anularía los fines principales que tuvo en cuenta el legislador.

"4. Soy, por tanto, de opinión de que es el deber del Fiscal General de Puerto Rico y de los funcionarios de su departamento hacerse cargo de los procesos en las cortes insulares de los delitos bajo las leyes de Prohibición Nacional y que tales procesos deben ser seguidos a nombre de El Pueblo de Puerto Rico. Estas conclusiones no están en conflicto con el criterio sustentado por la Corte Suprema de Puerto Rico en el caso de *El Pueblo* v. *Torres,* 28 D.P.R. 835, pues en ese caso la corte tuvo bajo su consideración ciertas disposiciones de la sección 2 de la ley de marzo 2, 1917, *supra.*

J. A. HULL,
*Procurador General Interino."*

El apelante no obstante en el acto de la vista alegó que el caso de Rodríguez, *supra,* no resolvió el punto de que al

extenderse la jurisdicción a las "Cortes Territoriales de Puerto Rico," palabras de la ley de 21 de septiembre de 1922, esta ley se refería a las cortes de distrito, esto es, a las cortes de récord. Y sostuvo que las cortes municipales no tienen jurisdicción para conocer de los casos de prohibición.

Implícitamente esta cuestión fué resuelta en dicho caso toda vez que el mismo procedía en su origen de una corte municipal, y por otra parte, el apelante al hacer dicha alegación no hizo cita alguna de jurisprudencia o autoridades que pudieran sostener su contención.

No está demás decir, sin embargo, que el término "Cortes Territoriales" que emplea la ley del Congreso se refiere a nuestro sistema de cortes tal como fué implantado por la ley reorganizando el sistema judicial de Puerto Rico etc., aprobada en marzo 10 de 1904 (Comp. 1148). Esta es una de las conclusiones que se desprende del documento antes transcrito, y además en Bouvier's Law Dictionary, Rawle's Revision, vol. 2, p. 1122, refiriéndose a las Cortes Territoriales, también se dice:

"*Las Cortes Territoriales.*—En los territorios, el poder judicial está investido en la corte suprema, constituída de un juez presidente y jueces asociados, que desempeñan sus cargos por un término de cuatro años, cortes de distrito, cortes de testamentaría, y juzgados de paz. En Arizona el poder judicial estaba investido en una corte suprema y en aquellas cortes inferiores que el consejo legislativo pueda por ley establecer, y de acuerdo con esta facultad se regulaba sobre la constitución de cortes de testamentaría y juzgados de paz; y por la ley de febrero 11, 1891, el Congreso dispuso lo concerniente a la constitución de cortes de distrito que habían de ser desempeñadas por un juez de la corte suprema. Estas cortes territoriales no son cortes constitucionales, esto es, cortes a las cuales se confiere facultad judicial por la constitución de los Estados Unidos; pero sus facultades y deberes son conferidos a las mismas por las leyes del Congreso que las creó. No es necesario enumerar estas leyes. En cuanto a una relación detallada de la legislación sobre la materia, véase 1 Garl. & Ralst. Fed. Pr. sec. 444. Véanse también los títulos sobre los varios territorios."

Corpus Juris trata del sistema judicial de Puerto Rico y habla de las. Cortes Insulares como Cortes Territoriales, y en él se lee:

"Puerto Rico — 1. — Cortes Territoriales. — El poder judicial de Puerto Rico está investido en las cortes y tribunales de Puerto Rico según están ahora establecidos, a saber, la Corte Suprema, cortes de distrito insulares, cortes municipales, y juzgados de paz." 25 C. J. 983.

Mediante el segundo error el apelante sostiene que la prueba no demuestra el hecho de la transportación porque no aparece que el automóvil se moviera del sitio en que fué sorprendido con los licores. La prueba tendió a establecer que un policía vió unos sacos en la acera del Casino Español de Humacao, y sospechando que contuvieran licores se acercó al sitio ya cuando habían sido puestos dentro de un automóvil que permanecía parado frente a dicho casino. Los sacos resultaron contener 27 botellas de champagne y 12 de ron. El acusado estaba presente y dirigiéndose al policía señaló a los sacos diciendo: "esto es mío." Dicho policía procedió entonces al arresto del acusado quien insistió con el policía que esperara mientras hablaba con el sargento para arreglar el asunto. Ante este. último oficial el acusado admitió habérsele ocupado por el primero los licores y dicho oficial procedió a presentar la denuncia.

En virtud de estos hechos parece inútil insistir en razonamiento .alguno para considerar el delito tal como ha sido especificado en la denuncia. No era necesario que el automóvil se hubiera movido del sitio en que se encontraba para que se consumara el delito. El automóvil por sí es un medio de locomoción o transporte y el simple hecho de encontrarse dentro del vehículo los licores que fueron vistos fuera del mismo implica la materialidad del delito así como la intención clara y manifiesta del acusado para cometerlo.

La prueba en conjunto es suficiente para sostener la de-

nuncia y no apareciendo error alguno de los autos, *debe confirmarse la sentencia.*

Los Jueces Asociados Sres. Wolf y Hutchison disintieron.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. WOLF.

Las razones para mi disentimiento en este caso han sido expresadas en el de *El Pueblo* v. *Rodríguez,* sentencia de junio 17, 1924, (pág. 393 *ante*).